IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | * | |
| Plaintiff, | * | |
| | * | Civ. No. DLB-21-0581 |
| v. | * | |
| **REDZONE BLITZ, LLC,** *et al.*, | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM**

Joe Hand Promotions, Inc. ("Joe Hand") filed this action against Redzone Blitz, LLC d/b/a Redzone Blitz ("Redzone Blitz") and Brian Ricasata, alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. ECF 1.[1] The defendants were properly served with the summons and complaint in March of 2021 but did not file an answer or otherwise respond. ECF 5 & 6. On November 23, 2022, the Clerk entered a default as to both defendants for failure to plead or otherwise defend. ECF 11. The defendants did not respond. Joe Hand filed a motion for default judgment. ECF 18. For the following reasons, the Court grants the defendants' motion as to Redzone Blitz but denies it as to Ricasata.

**I.  Background**

Joe Hand licenses and distributes televised sporting events to bars, restaurants, and other similar establishments. ECF 1, at 3. Redzone Blitz, LLC is a business entity that maintains or controls the establishment known as Redzone Blitz. *Id.* at 2. Joe Hand alleges, on information and belief, that Brian Ricasata is the "officer, director, shareholder, member, and/or principal of the

---

[1] Joe Hand also originally filed suit against Bruce Goodman. ECF 1. The Court dismissed the claim against Goodman due to Joe Hand's failure to timely effect service. ECF 10.

entity owning and operating the Establishment." *Id.* Joe Hand attached to its motion for default judgment Ricasata's Facebook page listing him as the "owner" of Redzone Blitz. ECF 18-3. Joe Hand had the exclusive right to license and distribute the *Errol Spence, Jr. v. Mikey Garcia* program and entered into agreements with various establishments in Maryland that allowed them to show this telecast to their patrons for a fee. ECF 1, at 3–4. Joe Hand alleges that on March 16, 2019, the defendants unlawfully intercepted or received the program to show it to their patrons without paying the fee. *Id.* at 4.

On the night of the program, Joe Hand hired auditor Wittel Allen to watch the program at Redzone Blitz. ECF 18-1, at 4. Allen did not pay a cover charge for entry. ECF 18-5, at 1. Allen noted that the establishment had an approximate capacity of 250 people, and he counted 250 patrons present that evening. ECF 18-1, at 4. The rate for a commercial license to show the program at an occupancy of 201 to 300 people was $3,200. ECF 18-8. On the day of the event, Redzone Blitz advertised the event on Facebook. ECF 18-1, at 4. Shortly before and after this program, Redzone Blitz also advertised on Facebook for two other events for which Joe Hand possessed the commercial exhibition rights. *Id.* at 10. Joe Hand contends that because it maintained proprietary rights in the signal of the events, the unlawful use of the signal by the defendants violated its rights and caused damages. *Id.* at 4.

On March 6, 2021, Joe Hand filed suit against the defendants. ECF 1. Redzone Blitz was properly served on March 12, 2021, and Brian Ricasata was properly served on March 13, 2021. ECF 5 & 6. On October 28, 2022, Joe Hand filed a motion for Clerk's entry of default as to both defendants, ECF 8, which the Clerk entered on November 23, 2022, ECF 11. On February 23, 2024, Joe Hand filed the pending motion for default judgment. ECF 18. Joe Hand requests statutory

damages of $3,200, enhanced damages of $16,000, and attorney's fees and costs of $2,072. ECF 18-1, at 15.

## II.     Standard of Review

The Court may enter a default judgment when a party has not responded to a pleading. *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing Fed. R. Civ. P. 55(a)–(b)(2)). The Fourth Circuit has a "strong policy" that cases should be "decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). However, when "the adversary process has been halted because of an essentially unresponsive party," default judgment may be appropriate. *Lawbaugh*, 359 F. Supp. 2d at 421 (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon default, the Court accepts as true the well-pled allegations in the complaint, but not the allegations as to damages. *Id.* at 422. The Court must determine "whether the well-pleaded allegations in the complaint support the relief sought." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 541 (D. Md. 2011). "The Court may either conduct an evidentiary hearing or accept affidavits and other documentary evidence into the record to determine what damages, if any, are warranted." *G & G Closed Cir. Events, LLC v. Blow Fish House, Inc.*, No. PX-23-652, 2023 WL 7016350, at *2 (D. Md. Oct. 25, 2023) (citing *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010)).

## III.    Discussion

Joe Hand seeks default judgment under 47 U.S.C. §§ 553 and 605. It acknowledges that when a defendant is liable under both §§ 553 and 605, the plaintiff may recover damages under only one section. *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 127 (2d. Cir. 1996). Because Joe Hand elects to recover under § 605, the Court need not address the alternative claim that the

defendants violated § 553. Considering the § 605 claim, the Court finds that Joe Hand has sufficiently alleged liability for Redzone Blitz, but not for Brian Ricasata. Further, the allegations support some, but not all, of the damages requested.

### A. Liability

Section 605 of the Communications Act "prohibits the unauthorized interception or receipt of certain radio communications, including 'digital satellite television transmission.'" *Joe Hand Promotions, Inc. v. Luz, LLC*, No. DKC-18-3501, 2020 WL 374463, at *2 (D. Md. Jan. 23, 2020) (quoting *J & J Sports Prods., Inc. v. Mayreal II, LLC*, 849 F. Supp. 2d 586, 588 (D. Md. 2012) (citing 47 U.S.C. § 605)). Joe Hand does not specify how the defendants intercepted the program. However, it does not need to allege a precise method to establish liability. It needs to allege only that a business entity "intercepted and displayed the program at its establishment, without authorization from [Joe Hand] on a particular date and at a particular time." *Id.* Taking the facts in the complaint as true, Redzone Blitz violated Section 605 of the Communications Act by broadcasting the program without a license. Joe Hand owned the exclusive rights to the program, and Redzone Blitz did not obtain a license before showing the program to its patrons on March 16, 2019. Accordingly, the Court finds liability as to Redzone Blitz. *Id.*

However, the Court cannot extend liability to Ricasata. Joe Hand alleges that Ricasata is vicariously liable for the violation of § 605 because he was the owner of Redzone Blitz on the night of the program. Courts have interpreted the test of individual liability in broadcast piracy cases to "require plaintiffs to show: (1) a 'right and ability to supervise the violative activity, although [defendants] need not actually be supervising because they need not know of the violative activity,' and (2) a 'direct financial interest in the violation.'" *J & J Sports Prods., Inc. v. Beer 4 U, Inc.*, No. TDC-18-2602, 2019 WL 5864499, at *4 (D. Md. Nov. 8, 2019) (quoting *J & J Sports*

4

*Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95–96 (3d Cir. 2018) (collecting cases); citing *J & J Sports Prods., Inc. v Brady*, 672 F. App'x 798, 801–02 (10th Cir. 2016)).

Joe Hand does not present sufficient facts to show Ricasata had the right and ability to supervise the unlawful airing of the program. In a case involving a similar violation of the Communications Act, *Joe Hand Promotions, Inc. v. Hill*, the court found the individual defendant liable largely because the plaintiff alleged that the individual owned the bar and was actively supervising the establishment on the night of the program. No. PX-21-557, 2022 WL 5245728, at *3 (D. Md. Oct. 6, 2022). In *G & G Closed Circuit Events*, the court did not find the individual defendants liable when the plaintiff alleged merely that they were "managing members" and appeared on the establishment's liquor license. *See G & G Closed Cir. Events*, 2023 WL 7016350, at *3. This case resembles *G & G Closed Circuit Events* more than it does *Hill*. Here, the only indication that Ricasata had the right and ability to supervise the illegal broadcast is an allegation that he was the "officer, director, shareholder, member, and/or principal of the entity owning and operating the Establishment" and a screenshot of his Facebook page biography listing him as the owner. ECF 18-1, at 14. The auditor did not see Ricasata at Redzone Blitz on the night of the program, and Joe Hand did not provide any other information about Ricasata's role at Redone Blitz. Therefore, Joe Hand has not shown Ricasata had "a right and ability to supervise the violative activity." *Beer 4 U*, 2019 WL 5864499, at *4 (quoting *Ramsey*, 757 F. App'x at 95–96 (collecting cases); citing *Brady*, 672 F. App'x at 801–02).

Joe Hand also fails to show Ricasata had direct financial interest in the violation. While Joe Hand does allege Ricasata owns Redzone Blitz, that alone does not establish Ricasata had a direct financial interest in the airing of the program. *See Zuffa, LLC v. Ferrell*, No. PX-20-273, 2021 WL 2315458, at *3 (D. Md. June 7, 2021); *see also Joe Hand Promotions, Inc. v. Up at

5

*Night, LLC*, No. GHB-21-580, 2023 WL 375188, at *3 (D. Md. Jan. 23, 2023). The Court cannot find Ricasata liable for the violation based only on an apparent representation on his personal Facebook page that he was the establishment's owner. Thus, the Court denies Joe Hand's motion for default judgment as to Ricasata.

### B. Damages

The Court next addresses damages. For violations of 47 U.S.C. § 605, a plaintiff may recover statutory damages of up to $10,000 for each violation. *See Up at Night*, 2023 WL 375188, at *3 (citing 47 U.S.C. § 605 (e)(3)(C)(i)(II)). If the Court also finds that the defendant committed the violation "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may award additional damages of up to $100,000. *Id.* Joe Hand seeks statutory damages of $3,200, enhanced damages of $16,000 (five times the statutory damages), attorney's fees, and $2,072 in costs. For the following reasons, the Court grants the requested statutory damages, fees, and costs. The Court also grants enhanced damages of $12,800.

#### 1. Statutory Damages

"[T]he statutory damages award that 'the court considers just,' 47 U.S.C. § 605 (e)(3)(C)(i)(II), is an approximation of the damages actually incurred by Plaintiff due to Defendant's violation." *Luz*, 2020 WL 374463, at *2 (quoting *J & J Sports Prods. v. Mumford*, No. DKC-10-2967, 2012 WL 6093897, at *3 (D. Md. Dec. 6, 2012)).

In support of its claim for statutory damages, Joe Hand provides auditor Wittel Allen's affidavit. Allen was present on the night of the program. He estimated that 250 patrons—the bar's capacity—attended Redzone Blitz that night. According to Joe Hand's rate card attached to the motion for default judgment, the cost of licensing the program for an establishment with a capacity

6

of 201 to 300 people was $3,200. Accordingly, Joe Hand is awarded statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $3,200.

### 2. Enhanced Damages

Joe Hand also seeks enhanced damages of $16,000, five times the statutory damages. When the defendant committed the violation willfully and for the purposes of substantial financial gain, enhanced damages are appropriate to "deter potential future unlawful uses of communications." *Luz*, 2020 WL 374463, at *2 (quoting *J & J Sports Prod., Inc. v. Sabor Latino Rest., Inc.*, No. PJM-13-3515, 2014 WL 2964477, at *3 (D. Md. June 27, 2014)). Courts in this district have relied on several factors to determine the appropriate amount of statutory damages: "1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks." *J & J Sports Prods. v. Quattrocche*, No. WMN-09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010). Depending on the "egregiousness of a defendant's conduct," courts usually award enhanced damages of two to five times the statutory damages. *Up at Night*, 2023 WL 375188, at *3 (quoting *Joe Hand Promotions, Inc. v. Phillips*, No. SAG-20-2261, 2021 WL 2861517, at *3 (D. Md. July 8, 2021) (collecting cases)).

To determine an enhanced damages award, courts in similar cases have considered the *Quattrocche* factors. *See Up at Night*, 2023 WL 375188, at *3; *Luz*, 2020 WL 374463, at *2; *Quattrocche*, 2010 WL 2302353, at *3. In *Luz*, the only *Quattrocche* factor found was evidence of willfulness, and the court multiplied the statutory damages by three to calculate enhanced damages. *Luz*, 2020 WL 374463, at *2. In *Up at Night*, several factors were present: the defendant had advertised the unauthorized broadcast and another broadcast not at issue and had charged patrons a $25 admission fee. *Id.* In that case, the court multiplied the statutory damages by five to

7

calculate enhanced damages. *See Up at Night*, 2023 WL 375188, at *4. Similarly, in *Hill*, the court multiplied the statutory damages by five because the defendant required patrons to either pay a $10 admission fee or buy a cigar to view the program. *See Hill*, 2022 WL 5245728, at *3. Courts have found that an admissions fee alone is sufficient to justify enhanced damages by a factor of five. *See J & J Sports Prods., Inc. v. KD Retail, Inc.*, No. PX-16-2380, 2017 WL 1450218, at *2 (D. Md. Apr. 20, 2017) (citing *Quattrocche*, 2010 WL 2302353, at *3).

Joe Hand asks for five times the statutory damages. First, it argues that Redzone Blitz unfairly profited by not paying the requisite fee and by selling food and drink and that Redzone Blitz caused financial harm to other businesses who did pay the fee. As evidence of "willfulness and intent to profit," Joe Hand points to Redzone Blitz's advertisements on Facebook. ECF 18-1, at 10. Additionally, Joe Hand argues that significant damages are required to address the "erosion of Plaintiff's legitimate customer base caused by signal piracy [that] has and continues to adversely affect Plaintiff's ability to survive in the business." *Id.*

The Court finds three of the *Quattrocche* factors support enhanced damages. Redzone Blitz willfully intercepted and showed the broadcast to its patrons for commercial gain. As other courts have pointed out, "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *KD Retail*, 2017 WL 1450218, at *2. Additionally, Redzone Blitz advertised the event on Facebook. And Redzone Blitz likely made significant financial gains because it was at full capacity, even though it did not charge an admission fee or increase food and drink prices. While Joe Hand does not explicitly allege repeated violations, it submits evidence that, in the months before and after the program at issue here was aired, Redzone Blitz advertised on Facebook two other programs for which Joe Hand had the exclusive license. After consideration of these factors, the Court finds that four times the statutory damages is a

reasonable measure of enhanced damages. This amount, $12,800, accounts for the defendant's financial gains from unlawfully airing the program and deters it from committing violations in the future.

### 3. Attorney's Fees and Costs

Joe Hand also may recover attorney's fees and costs as the prevailing party in this case. *G & G Closed Cir. Events*, 2023 WL 7016350, at *4 (citing 47 U.S.C. § 605(e)(3)(B)(iii)). Joe Hand seeks $1,500.00 in attorney's fees and $572.00 in costs. ECF 18-1, at 15.

To determine whether attorney's fees are reasonable, the Court must determine the lodestar amount, which is a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). The twelve factors provided in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), are relevant for determining the lodestar figure. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting *Johnson* factors).[2] For the Court to address the reasonableness of fees, the party seeking fees "must provide 'detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Matias Guerra v. Teixeira*, No. TDC-16-0618,

---

[2] The twelve factors in *Johnson* are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 229 n.28 (4th Cir. 1978).

9

2019 WL 3927323, at *2 (D. Md. Aug. 20, 2019) (quoting *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. June 23, 2016)).

First, the Court must determine whether the number of hours that counsel worked is reasonable. Justin Hollimon, counsel for Joe Hand, spent six hours on this matter. He does not break down how he spent his time on the case, but the Court reasonably infers that he spent his time drafting the complaint and the motion for default judgment and effecting service. Considering the *Johnson* factors, the Court finds the six hours Mr. Hollimon worked on this case is reasonable.

Next, the Court must determine whether counsel's proposed fee rate is reasonable. Mr. Hollimon did not include a statement of the number of years he has been a practicing attorney. However, he has been appearing in this Court since 2017, giving him at least seven years of experience. Thus, his hourly rate of $250 per hour is within this Court's Local Rules' Guidelines for hourly rates for attorneys of his experience. *See* Loc. R. App. B.3(b) (D. Md. July 1, 2023). At $250 per hour, Mr. Holliman's fees for six hours of work are $1,500.00. Therefore, the Court finds that $1,500.00 in attorney's fees is reasonable.

As to costs, Joe Hand seeks costs of $402 to file the complaint and $170 to effectuate service. These well-supported requests are reasonable. Therefore, the Court will award $572 in costs.

**IV.     Conclusion**

For the reasons above, Joe Hand's motion is granted in part and denied in part. Judgment in the amount of $18,072 is awarded as against defendant Redzone Blitz, LLC d/b/a Redzone Blitz. That award shall accrue post-judgment interest as provided for and calculated in accordance with 28 U.S.C. § 1961. A separate Order follows.


Date: <u>July 1, 2024</u>                                                                  _____
                                                                                                     Deborah L. Boardman
                                                                                                     United States District Judge